**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MAWSON INFRASTRUCTURE GROUP, INC.<br><br>Alleged Debtor. | Chapter 11<br><br>Case No. 24-12726 (MFW) |

**MAWSON INFRASTRUCTURE GROUP, INC.'S OBJECTION TO THE
MOTION OF CELSIUS NETWORK LIMITED FOR RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11. U.S.C. § 362(d)**

The above-captioned alleged debtor, Mawson Infrastructure Group, Inc. ("Mawson" or the "Alleged Debtor" or the "Company"), by and through its undersigned counsel, files this objection (the "Objection") to the *Motion of Celsius Network Limited for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 42] (the "Motion") and respectfully states as follows:

**PRELIMNARY STATEMENT[1]**

1.      Through the Motion, Celsius seeks relief from the automatic stay to prosecute a dispositive motion against Mawson in a pending arbitration.  This relief is inappropriate at this juncture.  The automatic stay protections in section 362 of the Bankruptcy Code, as enacted by Congress, expressly apply with the same force and effect for voluntary debtors as they do for involuntary debtors.  Courts are reluctant to grant motions for relief from the automatic stay during the gap period of involuntary cases – i.e. the time between the petition filing and when (or if) an order for relief is entered.  Here, the future of this involuntary proceeding is uncertain.  Mawson contests this involuntary proceeding and should be afforded the same automatic stay protections

---

[1]      Capitalized terms used in this Introduction, but not defined shall have the meaning ascribed to them as subsequently defined in this Objection.

as other debtors while it focuses its time, attention, and resources on contesting the involuntary petition. A trial will be scheduled to determine the appropriateness of this involuntary case and that should remain the focus of the putative debtor.

2.      Contrary to characterizations in the Motion, Mawson is not seeking to avoid the Arbitration. Rather, Mawson is abiding by the express provisions of the Bankruptcy Code which provide for a stay of all actions against a putative debtor until the future of the bankruptcy case is decided. The intention, as observed by courts, is to preserve the status quo and prevent a rush to the courthouse pending a determination on the appropriateness of the involuntary filing. Celsius conflates Mawson's acceptance of the Bankruptcy Code's express automatic stay protections with avoidance of the arbitration. Mawson acknowledges that the guaranty obligations will be litigated and resolved in arbitration, as was appropriately decided by the SDNY Order. Moreover, Mawson has pending counterclaims in the Arbitration, which if successful may exceed any guaranty claims Celsius has against Mawson, and support preserving the status quo to avoid the expenditure of resources in the interim that may ultimately prove to be unnecessary.

## BACKGROUND

### I.      History of Arbitration Claims

3.      On or about February 23, 2022, Celsius Mining LLC ("Celsius Mining") and Luna Squares LLC ("Luna") signed three (3) agreements: a Co-Location Agreement, a Promissory Note, and a Security Agreement (together, the "February 2022 Agreements").

4.      On July 13, 2022, Celsius Mining and other Celsius entities commenced chapter 11 bankruptcy proceedings (the "Celsius Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court") [Case No. 22-10964 (MG)].

5.      On November 21, 2023, Celsius Mining initiated an adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint") in the SDNY Bankruptcy Court. *See* Adv. Pro. No. 23-01202. In its Complaint, Celsius Mining asserted ten causes of action against Mawson, Luna, and Cosmos Infrastructure, LLC ("Cosmos" together with Mawson and Luna, the "Mawson Entities") arising from the February 2022 Agreements. *Id.*

6.      On January 2, 2024, the Mawson Entities moved to enforce the Co-Location Agreement's arbitration clause, which it argued encompassed Celsius Mining's related claims under the Promissory Note and Security Agreement and compel arbitration of the claims in the Complaint. *See* Adv. Pro. No. 23-01202; Docket No. 11. Celsius Mining filed an opposition to the motion on January 30, 2024 [Adv. Pro. No. 23-01202; Docket No. 21], the Mawson Entities filed a reply on February 16, 2024 [Adv. Pro. No. 23-01202; Docket No. 23] and the SDNY Bankruptcy Court held oral argument on February 21, 2024.

7.      On February 27, 2024, the SDNY Bankruptcy Court issued its Memorandum Opinion and Order [Adv. Pro. No. 23-01202; Docket No. 25] (the "SDNY Bankruptcy Court Order"). The SDNY Bankruptcy Court Order compelled arbitration as to the claims arising from the Co-Location Agreement (Counts III, IV, V, and IX of the Complaint), but denied the motion as to the remaining claims arising from the Promissory Note and Security Agreement. *Id.*

8.      The Mawson Entities timely appealed the SDNY Bankruptcy Court Order to the United States District Court for the Southern District of New York ("SDNY") on March 12, 2024 [Case No. 24-02063].

9.      In a comprehensive opinion, Judge McMahon of the SDNY reversed the SDNY Bankruptcy Court Order (the "SDNY Order") and compelled all claims asserted in the Complaint to arbitration. *In re Celsius Network, LLC*, 2024 WL 1719633 (S.D.N.Y. April 22, 2024).

10.     The Celsius parties did not appeal the SDNY Order, and it was not until July 10, 2024, nearly three months after the SDNY Order was entered, that the Celsius parties initiated the arbitration ("Arbitration").  The Arbitration was initiated by Celsius Network Ltd ("Celsius"), Celsius Mining, and Ionic Digital Mining LLC ("Ionic"). *Celsius Network Ltd et al. v. Mawson Infrastructure Group Inc. et al*, Case No. 01-24-0006-4462 (American Arbitration Association).

11.     Like the Complaint, Celsius' Arbitration demand (the "Arbitration Demand") asserted claims related to the February 2022 Agreements.

12.     In the Arbitration, Mawson, Luna, and Cosmos asserted fraudulent inducement, breach of contract, and breach of the covenant of good faith and fair dealing counterclaims against Celsius and Ionic. These counterclaims relate to (i) Celsius' alleged failure to deliver miners to Luna as required by the Co-Location Agreement, (ii) Celsius' alleged failure to pay Luna millions of dollars in invoices for services provided under the Co-Location Agreement, and (iii) Celsius' execution of the February 2022 Agreements while allegedly knowing that it would not meet its obligations because of its impending bankruptcy.  The Mawson Entities have sought to accelerate the disposition of these counterclaims in the arbitration by filing a request to submit their own dispositive motions, which request was opposed by Celsius.  The parties are currently engaged in discovery in the Arbitration.[2]

## II.     The Involuntary Bankruptcy

13.     On December 4, 2024, W Capital Advisors Pty Ltd. as trustee for the W Capital Advisors Fund, Marshall Investments MIG Pty Ltd. as trustee for the Marshall Investments MIG Trust, and Rayra Pty Ltd. as trustee for The Mountainview Trust (together, the "Petitioning

---

[2]      Ionic has taken the position in its responses to the Mawson Entities' discovery requests in the Arbitration that the "arbitration is stayed with respect to Ionic" due the pendency of the involuntary proceeding and objected to discovery requests made on that basis.

Creditors," all of whom are Australian entities) filed an involuntary petition [Docket No. 1] (the "Involuntary Petition") seeking relief against the Alleged Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.    On January 10, 2025, Mawson filed its answer [Docket No. 16] (the "Answer") seeking dismissal of the Involuntary Petition.

15.    The Petitioning Creditors and Mawson have exchanged discovery requests and are negotiating a timeline for discovery and dates for a trial to be held on the appropriateness of the Involuntary Petition.

16.    On February 11, 2025, Celsius filed the Motion. *See* Docket No. 42.[3]

## ARGUMENT

### I.    The Automatic Stay Applies with Equal Force and Effect in Involuntary Proceedings.

17.    Section 362 of the Bankruptcy Code provides that "a petition filed under section…303 of this title,…operates as a stay, applicable to all entities, of (1) the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(1).

18.    The legislative history reflects that the automatic stay has a dual purpose of protecting the debtor and all creditors alike.

The automatic stay gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure action. It permits the debtor to

---

[3]    Paragraph 5 of the Motion states that Mawson "has not responded to Celsius' request" to consent to relief from the automatic stay. This is incorrect. On February 6, 2025, Celsius' counsel sent a letter to Mawson's counsel requesting that they advise no later than February 7, 2025 at 4:00 p.m. (EST) whether Mawson would consent to relief from the automatic stay for Celsius to pursue the Rule 34 Motion in the Arbitration. On February 7, 2025 and subsequently, Mawson's counsel advised Celsius' counsel that Mawson's decision-maker for this issue was traveling, and that Mawson could not respond fully until its counsel could discuss the requested relief with Mawson's requisite decision-maker.

attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditors protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977); reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6296–6297.

19.     It is clear based on the plain language of section 362(a) and relevant caselaw that the automatic stay applies in involuntary bankruptcies: "The commencement of the involuntary chapter 11 petition gives rise to imposition of the automatic stay." *In re Student Finance Corp.*, 378 B.R. 73, 78 (Bankr. D. Del. 2007); *see also Interpool Ltd. v. Certain Freights of the M/Vs Venture Star, Mosman Star, Fjord Star, Lakes Star, Lily Star, et. al.*, 878 F.2d 111, 112 n. 4 (3d Cir. 1989) (noting that an involuntary bankruptcy case triggers the automatic stay). Courts in other jurisdictions have similarly held that the automatic stay applies automatically upon the filing of an involuntary petition. *See Gilchrist v. Gen. Electric Capital Corp.*, 262 F.3d 295, 303 (4th Cir. 2001) (explaining that the automatic stay commences upon filing of involuntary petition); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1273 (5th Cir.1983) (same); *Eldorado Canyon Properties, LLC v. Mantalvanos*, 515 B.R. 852, 855 (M.D. Fla. 2014) (same); *In re E.D. Wilkins Grain Co.*, 235 B.R. 647 (Bankr. E.D. Cal. 1999) (same); *In re Pink Moon Enters., LLC*, 444 B.R. 490, 491 (Bankr. S.D. Fla. 2011) ("[T]he filing of an involuntary petition under § 303 immediately imposes the automatic stay under § 362(a)."); *British Aviation Ins. Co., Ltd. v. Menut (In re State Airlines, Inc.)*, 873 F.2d 264, 268 (11th Cir. 1989) (in determining whether a conversion to a chapter 7 case operates as a stay, the Eleventh Circuit stated in *dicta* that "[T]he filing of a petition under section ... 303 operates as a stay under

section 362."); *In re Signature Apparel Group LLC*, 577 B.R. 54 (Bankr. S.D.N.Y. 2017) ("[t]he automatic stay takes effect instantly when involuntary bankruptcy petition is filed").

20.    Notably, "[i]t can only be assumed that Congress felt putative debtors should be free from all other concerns while the question of bankruptcy is at issue thereby allowing the debtor to concentrate exclusively on that one issue." *In re Oxford Dev., Ltd.*, 115 B.R. 216, 217 (Bankr. W.D. Mo. 1990).  That is precisely the issue Mawson is faced with in this involuntary proceeding. Notwithstanding that Mawson contests the validity of the Involuntary Petition and argues that the case should be dismissed, the automatic stay is in place in involuntary cases for the important purpose of preserving the status quo and allowing involuntary putative debtors to focus on one gating issue – whether an order for relief can and should be entered.

21.    Additionally, courts are reluctant to grant relief from the automatic stay during the "gap period" of an involuntary bankruptcy (*i.e.*, the period between the filing of an involuntary petition and entry of an order for relief).  *See Id*. ("the automatic stay is present in all involuntary cases, by definition, through the gap period and even if the debtor is never adjudicated a bankrupt.").  In *In re E.D. Wilkins Grain Co.*, 235 B.R. 647 (Bankr. E.D.Cal. 1999), the court noted that if it were to permit an involuntary debtor to stipulate to relief from the automatic stay prior to the entry of an order for relief, it would undermine the administration of the estate by any future trustee and deprive interested parties of notice and the opportunity to oppose the motion.  *Id.* at 649-50; *see also In re Sweports, Ltd.*, 476 B.R. 540, 545 (Bankr. N.D.Ill. 2012); *In re Signature Apparel Group LLC*, 577 B.R. at 87 ("[w]hile an involuntary debtor may operate its business, the debtor may not waive the protections afforded to property of the estate by the automatic stay.").

22.    Here too, during this "gap period," the Court should refrain from granting relief from the automatic stay, as it would impact the administration of the estate if an order for relief is

entered. Granting this relief at this juncture is contrary to legislative intent.  Moreover, if Celsius is allowed relief from the automatic stay, other creditors may make similar requests, initiating a gap period race to the courthouse that courts have observed is contrary to the purpose of the automatic stay in involuntary cases.

23.     The cases that Celsius cites in the Motion are distinguishable.  None of the cases involve an involuntary bankruptcy proceeding.  Specifically, *In re GWI, Inc.*, 269 B.R. 114 (Bankr. D. Del 2001) is distinct as it involved an adversary proceeding filed by a reorganized chapter 11 debtor seeking a declaratory judgment that the escrow agent could release funds held in escrow, and the creditor filed a motion to stay the adversary proceeding.  *Id.* at 115-16.  The bankruptcy court in *In re GWI, Inc.* enforced the arbitration clause in the pre-petition purchase agreement because the debtor adopted the provisions of the purchase agreement and related escrow agreement in its confirmed plan of reorganization.  *Id.* at 117-18.  Here, unlike in *In re GWI, Inc.*, Celsius filed a motion for relief from the automatic stay in an involuntary bankruptcy and is not seeking to stay the involuntary bankruptcy pending the arbitration.  Additionally, a plan incorporating an arbitration clause has not been confirmed by the Court.  In fact, the Court has not even entered an order for relief or made a determination as to whether the Involuntary Petition was filed in bad faith by the Petitioning Creditors.  The arbitration of the disputed claims between Celsius and Mawson is not relevant to this determination, and the arbitration should be stayed as to Mawson until the Court decides whether this involuntary bankruptcy should proceed.  The Court need not decide the Motion until it rules on whether an order for relief should be entered.

24.     Similarly, *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989) and *In re Mintze*, 434 F.3d 222 (3d Cir. 2006) are distinguishable as they do

not involve involuntary bankruptcies, did not involve motions for relief from the automatic stay, and were not filed during the "gap period."

25.     Further, Celsius conflates Mawson's acceptance and abidance of the automatic stay protections with a desire to avoid arbitration.  Just like Mawson did not ask to be put into this involuntary proceeding, Mawson did not ask for Celsius to bypass the arbitration provision in the Co-Location Agreement and improperly commence an adversary proceeding against Mawson in the SDNY Bankruptcy Court. In the Motion, Celsius argues that "Mawson insisted that Celsius' claims under the guaranty be arbitrated, and the Mawson Rule 34 Motion will be adjudicated in Mawson's chosen forum, same as the Promissory Note." Motion, at ¶ 18. Mawson argued in the Celsius Bankruptcy Cases that these disputes be arbitrated because of the plain language of the Co-Location Agreement.  It is misleading to assert that Mawson, and Mawson alone, chose the forum. This was an agreement between the parties, which Celsius initially ignored, only to be compelled by the SDNY.  Mawson is not seeking to have the arbitration claims adjudicated outside of the Arbitration. Mawson is simply seeking to enforce what already expressly exists under section 362(a) of the Bankruptcy Code – the automatic stay protections for involuntary debtors – and to continue with the status quo while the future of the involuntary case is decided.  Mawson is reacting to these claims, and Mawson's focus at this juncture should remain on the viability of the Involuntary Petition.

## II.     Cause Does Not Exist to Grant Relief from the Automatic Stay.

26.     As noted above, the automatic stay under section 362(a) specifically applies to involuntary cases filed under section 303. *In re Student Finance Corp.*, 378 B.R. at 78; *see also Interpool Ltd. v. Certain Freights of the M/Vs Venture Star, Mosman Star, Fjord Star, Lakes Star, Lily Star, et. al.*, 878 F.2d at 112 n. 4.  The stay is needed to preserve the status quo "while the

question of bankruptcy is at issue thereby allowing the debtor to concentrate exclusively on that one issue." *In re Oxford Dev., Ltd.*, 115 B.R. at 217. For this reason and this reason alone, the Motion should be denied.

27.     Even if the Court were to consider whether cause exists to lift the automatic stay, the factors weigh in favor of denial. Mawson's time and attention will be split between the Arbitration and Involuntary Petition.  As noted above, courts have found that such split focus runs counter to the intended purpose of the automatic stay and should be avoided during the gap period following an involuntary filing. Importantly, unlike the note claim previously at issue with Mawson's subsidiary Luna, the Mawson Rule 34 motion has not been briefed.[4] There are significant costs associated with each of these matters, and should relief be granted, Mawson's executives and professionals would then be required to divert resources away from the Involuntary Petition which – again – is counter to the weight of caselaw.  Celsius previously acknowledged the diversion of management resources as favoring maintaining the automatic stay.  *See* Adv. Pro. No. 50008 (MFW); Docket No. 15 at ¶ 24.  Moreover, as discussed above, if Celsius obtains stay relief to obtain a judgment, other creditors may make similar requests for relief, thereby adding to Mawson's burden while addressing the Involuntary Petition during the critical gap period.

28.     Second, there is little hardship to Celsius in maintaining the status quo.  There is no urgency to the Mawson Rule 34 Motion being decided. Celsius waited almost three months to initiate the Arbitration after the SDNY Order was issued. This belies the urgency argument in the Celsius Motion.  Further, Celsius represents that it is not seeking to enforce a judgment against Mawson (should it obtain one), which implicitly acknowledges a lack of immediacy for relief from

---

[4]     During the hearing on January 22, 2025 in adversary proceeding number 25-50008, Celsius' counsel argued that there would be no cost to Mawson in proceeding with the arbitration claims against Luna because the matter had been fully briefed. Hrg. Tr.18:3-9; 19:5-9.

the automatic stay.  The matter can be revisited once the Court makes a determination on the validity of the Involuntary Petition.[5]

29.    Finally, as noted, the Mawson Entities have pending counterclaims in the Arbitration, which, if successful, may exceed Celsius' claim under the guaranty.  While Celsius has sought to expedite the timeline for disposition of its claims in the Arbitration, it has opposed the Mawson Entities' attempts do the same with its counterclaims.  Celsius wants the Arbitration to proceed on a one-way street.  As such, Celsius is seeking to rush to the courthouse and require the parties to partake in expensive litigation to potentially obtain a claim against Mawson that ultimately may prove to be moot.  This scenario is a hallmark example of why the automatic stay should remain in place – as intended under the Bankruptcy Code – while the propriety of the Involuntary Petition is evaluated.

## **CONCLUSION**

30.    For the foregoing reasons, Mawson respectfully requests that the Court enter an order denying the Motion and granting Mawson such other and further relief as the Court deems just and proper.

*[Space intentionally left blank]*

---

[5]    If the Court dismisses the Involuntary Petition, Celsius' need to obtain stay relief will be moot.

Dated: February 19, 2025          **FOX ROTHSCHILD LLP**

*/s/ Seth A. Niederman*
Seth A. Niederman (No. 4588)
Stephanie Slater Ward (No. 6922)
1201 North Market Street, Suite 1200
Wilmington, DE  19801
Telephone: (302) 654-7444
Email: sniederman@foxrothschild.com
Email: sward@foxrothschild.com

 -and-

Michael A. Sweet (admitted *pro hac vice*)
345 California Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 364-5540
Facsimile: (415) 391-4436
Email: msweet@foxrothschild.com

-and-

Michael R. Herz (admitted *pro hac vice*)
49 Market Street
Morristown, NJ 07960
Telephone: (973) 548-3330
Email: mherz@foxrothschild.com

*Counsel to the Alleged Debtor*

## <u>CERTIFICATE OF SERVICE</u>

I, Seth A. Niederman, hereby certify that on the 19th of February 2025, a true and correct copy of the foregoing *Mawson Infrastructure Group Inc.'s Motion of Celsius Network Limited for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* was served on the parties below in the manner(s) indicated and all ECF participants in this case were served electronically through the Court's ECF noticing system.

/s/ Seth A. Niederman
Seth A. Niederman

## <u>VIA FIRST CLASS MAIL</u>

Daniel A. O'Brien (No. 4897)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
daobrien@venable.com

Jeffrey S. Sabin
VENABLE LLP
151 West 42nd St.
New York, New York 10036

Andrew J. Currie
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001

Stephen Moeller-Sally
WHITE & CASE LLP
75 State Street
Boston, MA 02109

Keith H. Wofford
WHITE & CASE LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4900
Miami, Florida 33131-2352

*Counsel for Celsius Network Limited*

Robert J. Dehney
Tamara K. Mann
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street, 16th Floor
Wilmington, DE 19801

*Counsel to the Petitioning Creditors*

U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
 Lockbox 35
Wilmington, DE 19801