**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Mawson Infrastructure Group, Inc.,<br><br>Alleged Debtor. | Chapter 11<br><br>Case No. 24-12726 (MFW) |

**REPLY OF CELSIUS NETWORK LIMITED TO**
**MAWSON INFRASTRUCTURE GROUP, INC.'S OBJECTION TO**
**THE MOTION OF CELSIUS NETWORK LIMITED FOR RELIEF FROM**
**THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

Celsius Network Limited ("**Celsius**"), acting by and through the Blockchain Recovery Investment Consortium LLC, in its capacity as Complex Asset Recovery Manager and Litigation Administrator for Celsius Network LLC and its affiliated Post-Effective Date Debtors, hereby files this reply (the "**Reply**") to *Mawson Infrastructure Group, Inc.'s Objection to the Motion of Celsius Network Limited for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 45] (the "**Objection**"). In support of the Reply, Celsius respectfully states as follows:[1]

**PRELIMINARY STATEMENT**

1. Mawson Infrastructure Group, Inc., the alleged debtor in this involuntary chapter 11 case ("**Mawson**" or the "**Alleged Debtor**"), fails to present any cogent reason why this Court should not grant the Lift Stay Motion to permit Celsius to seek a partial

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of Celsius Network Limited for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "**Lift Stay Motion**").

final award on the Guaranty in the Arbitration. The relief sought by Celsius here is limited, consented to by the petitioning creditors, and is narrowly crafted to avoid any dismemberment of the Mawson estate.[2] Given the continuing opposition of Mawson to the involuntary petition, and the minimal burden on Mawson to restate the same tired arguments for the fourth or fifth time in a single response brief, the relief should be granted.

2. Mawson devotes a significant portion of its Objection arguing a point of law that is not in dispute, *i.e.*, that the filing of an involuntary petition triggers the automatic stay.[3] Indeed, that point of law is the foundation of Celsius's Lift Stay Motion. The Objection argues inconsistently that the automatic stay applies equally in voluntary and involuntary cases, but that court decisions addressing relief from the automatic stay in voluntary cases do not apply to involuntary cases. The Objection also contends, without foundation, that courts are reluctant to grant relief from stay during the "gap period" between the filing of an involuntary petition and the entry of an order for relief.

3. Mawson wastes pages reiterating its own version of events — from the parties' entry into the Note, Guaranty and Co-Location Agreement to the filing of the Lift Stay Motion[4] — a version that has been heard and rejected by the Arbitrator and should

---

[2] By letter dated February 6, 2025, Celsius's counsel requested Mawson's consent to the relief requested in the Lift Stay Motion and attached a proposed form of order. The next day Mawson's counsel informed Celsius that Mawson could not provide a position on the Lift Stay Motion, because the decisionmaker at Mawson was not available due to international travel. Celsius's counsel reached out again the following Monday, February 10. Mawson's counsel responded the next day that Mawson still could not provide a position on the Lift Stay Motion due to the decisionmaker's international travel. Mawson never offered a substantive response to Celsius's request for consent, and Mawson's position on the Lift Stay Motion only became known to Celsius when Mawson filed the Objection at 3:43 p.m. on February 19.

[3] Mawson cites nine cases for this proposition, only one of which involves a request for relief from stay. In that case, relief from stay was granted, albeit in different circumstances from the present case. *See, In re Pink Moon Enters., LLC*, 444 B.R. 490, 491 (Bankr. S.D. Fla. 2011).

[4] Celsius does not concede Mawson's characterization of these events, including, without limitation, the District Court's ruling on appeal. The District Court did not hold that the Promissory Note and Guaranty must be arbitrated, but rather that the question whether the arbitration clause in the Co-Location Agreement applied to the Promissory Note and Guaranty was for an arbitrator to decide.

not be resuscitated here. Mawson's willingness to reverse legal positions is unrelenting: having relied on the terms of the Co-Location Agreement to compel Celsius into the Arbitration, the Mawson entities now claim that Celsius fraudulently induced them into agreements that they have already enforced in another court.[5] This is the same flavor of gamesmanship that Celsius complained of in arguing against the TRO Motion only a month ago.

4.  The only purported justification Mawson can muster for denying the Lift Stay Motion is that it is inconvenient for Mawson to respond to Celsius's dispositive motion on the Guaranty (the "**Rule 34 Motion**") and also oppose the involuntary petition at the same time. This minimal incremental burden is not sufficient reason for this Court to deny the Lift Stay Motion (and in fact may speak directly to the issue of Mawson's alleged *bona fide* disputes of its debt at issue in the involuntary trial).

## REPLY

**A.    Celsius's Lift Stay Motion Does Not Contravene the Purpose of the Automatic Stay in Involuntary Cases.**

5.  The purpose of the automatic stay in involuntary cases is to protect the estate of the alleged debtor for the benefit of creditors. "When a debtor is not paying its debts as they come due, creditors may file an involuntary petition to preserve the debtor's assets

---

[5] The Mawson entities have raised the fraudulent inducement theory multiple times in the Arbitration, including in their response (the "**Response Letter**") to Celsius's request to file a Rule 34 motion on the Promissory Note and Guaranty (the "**Celsius Rule 34 Request**"), where the Mawson entities state that "Respondents allege that Claimant made misrepresentations during the negotiations, rendering the agreements unenforceable." *See* Response Letter at p. 6. The Celsius Rule 34 Request, the Response Letter, Celsius's reply, and the Arbitrator's ruling on the request are attached as Exhibit A to the *Declaration of Keith H. Wofford in Support of Reply of Celsius Network Limited to Mawson Infrastructure Group, Inc.'s Objection to the Motion of Celsius Network Limited for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "**Third Wofford Declaration**"), filed contemporaneously herewith.

rather than run the risk that the debtor will be financially dismembered by other creditors or dissipated through the debtor's incompetence or dishonesty." *In re E.D. Wilkins Grain Co.*, 235 B.R. 647, 650 (Bankr. E.D. Cal. 1999).

6. Mawson ignores this obvious purpose and instead rests its Objection on the speculation of a single court that Congress imposed the automatic stay in involuntary cases to give the debtor breathing room to address the involuntary petition. *In re Oxford Dev., Ltd.*, 115 B.R. 216, 217 (Bankr. W.D. Mo. 1990). The legislative history cited by Mawson does not support this speculation, and Mawson does not cite any other case maintaining this view.

7. The Lift Stay Motion does not threaten Mawson's assets. To the contrary, the Lift Stay Motion expressly provides that, if granted, Celsius would not be authorized to undertake any Guaranty Award Enforcement Actions against Mawson's assets without a further order of the Court, which would include any order dismissing the involuntary petition.

**B.     Mawson Fails to Demonstrate that Courts Have Any Reluctance to Grant Relief from Stay to Creditors in Involuntary Cases that Show Cause.**

8. Mawson wrongly suggests that the standards for relief from stay differ between voluntary and involuntary cases. There is no basis for such a distinction in the Bankruptcy Code, and Mawson does not cite a single case that draws one. Accordingly, the Court should disregard Mawson's attempts to distinguish court decisions cited by Celsius on the grounds that such decisions involved voluntary, and not involuntary, bankruptcy cases. If anything, the Alleged Debtor's strident statements with respect to the improper nature of the involuntary petition undermine its rationale for objecting to the Lift

Stay Motion.

9. Mawson argues that courts are reluctant to grant relief from stay during the "gap period," but the cases cited do not support this contention. The citation to the *Oxford* case merely restates the undisputed point of law that the automatic stay arises upon the filing of an involuntary petitions and remains in place until an order for relief is entered or the case is dismissed. The other cases Mawson cites stand for a very different proposition, specifically, that an alleged debtor in an involuntary case does not have the powers of a trustee or debtor-in-possession and, therefore, cannot waive, or stipulate to relief from, the automatic stay. *See, Wilkins*, 235 B.R. at 650 ("Permitting an involuntary debtor to simply stipulate away the automatic stay for a future trustee would also frustrate the very purpose of arming creditors with the right to file an involuntary petition."); *In re Sweports Ltd.*, 476 B.R. 540, 545 (Bankr. N.D. Ill. 2012) ("An alleged debtor . . . has 'no ability to waive the protection afforded to property of the estate by the automatic stay.'") (quoting *Wilkins*); *In re Signature Apparel Group LLC*, 577 B.R. 54, 87 (Bankr. S.D.N.Y. 2017) (same). Thus, the only way to obtain relief from stay in an involuntary case is to file a motion with the bankruptcy court, which is precisely what Celsius has done. *See, Wilkins* 235 B.R. at 651.

10. Further, any "reluctance" would be contrary to the express terms of section 362(d), which provides that the court **shall** grant relief from stay if the creditor can make the relevant showings in any applicable clause thereof. Accordingly, courts have granted relief from stay even in involuntary cases where a secured creditor has sought to exercise remedies against a debtor's property. For example, in *In re New Era Co.*, 115 B.R. 41, 45-46 (Bankr. S.D.N.Y. 1990), the United States Bankruptcy Court for the Southern District of New York granted relief from stay in an involuntary case to permit a secured lender to

foreclose on a mortgaged property pursuant to section 362(d)(2) of the Bankruptcy Code. Courts have also granted relief from stay to determine creditors' respective rights to a debtor's assets. *See, Wagner, Choi & Evers v. Woo (In re Worldpoint Interactive, Inc.)*, Adv. No. 03-90015, 2005 WL 6960239 at *3 (B.A.P. 9th Cir. June 28, 2005) (describing the bankruptcy court's grant of relief from stay in the "gap period" to permit a state court hearing an interpleader action to enter an order concerning the relative priorities of the alleged debtor's creditors to the proceeds of a sale of the debtor's assets).

C. **Cause Exists to Lift the Automatic Stay, and Mawson's Arguments to the Contrary Are Unavailing.**

11.     Mawson argues (with no support) that there are significant costs and a drain on management attention associated with briefing the Rule 34 Motion. This objection ignores the background of the Rule 34 Motion. First, the Arbitrator has already rendered a partial final award on the underlying Promissory Note and expressly ruled that the Note Documents (including the Guaranty) are not integrated with the Co-Location Agreement. Promissory Note Award, p. 4 [Second Wofford Declaration, Ex. B]. Second, the Guaranty contains an even broader waiver of defenses and counterclaims than in the Promissory Note.[6] Third, having granted Celsius permission to file the Rule 34 Motion, the Arbitrator has already determined that Celsius is likely to succeed on the merits with respect to the Guaranty. In this context, Mawson's resistance to moving forward with the Rule 34 Motion is just one more effort to delay the inevitable, and to create further unwarranted

---

[6]     The Promissory Note states succinctly that "Maker shall make each payment under this Note . . . without setoff or counterclaim." Promissory Note, § (v). Mawson's acknowledgement that its guaranty obligations are absolute, and its waiver of defenses stretches for two pages. Guaranty and Security Agreement, §§ 7.3 and 7.4. Copies of the Promissory Note and Guaranty and Security Agreement are attached as Exhibit B and Exhibit C, respectively, to the Third Wofford Declaration.

expense for Celsius in enforcing its rights.

12. Mawson repeats the argument it made in its TRO Motion that there is no prejudice to Celsius in waiting for an award on the Guaranty. The prejudice of delay is obvious and no different than for the Promissory Note, given that payment obligations both arose eighteen months ago and the Arbitration has been ongoing now for over seven months.[7] Further, any delay in prosecuting the Rule 34 Motion will prove inefficient, since it would cause Celsius to seek confirmation of two related awards in two separate court proceedings, rather than allowing Celsius to confirm the partial final award on the Promissory Note and, if granted, a partial final award on the Guaranty in a single proceeding. The incurrence of excess costs is concerning to Celsius, given the risk of nonpayment. The partial final award on the Promissory Note has been outstanding for four weeks, and Luna has given no indication that it plans to pay Celsius by February 24 as required by the partial final award.[8]

13. Any counterclaims that have been asserted in the Arbitration are irrelevant to the relief sought in the Lift Stay Motion for at least several reasons. First, the alleged counterclaims arise under the Co-Location Agreement, and neither Celsius nor Mawson are parties to that agreement. Second, the Guaranty contains an express – and expansive – waiver of defenses and counterclaims. In the case of the Promissory Note, the Arbitrator found such waivers enforceable and required payment notwithstanding any alleged

---

[7] In its ruling on Mawson's TRO Motion, the Court noted the prejudice to Celsius resulting from a stay of the Arbitration: "Mawson is asserting it's just a delay of a couple of months, but a delay of a couple of months is significant here, where the parties have been in arbitration for at least six months." Hearing Transcript, 31:23 – 32:1 [Second Wofford Declaration, Exhibit A].

[8] Luna's deadline to pay the Partial Final Award on the Promissory Note is two days prior to the hearing on Celsius's Lift Stay Motion. Celsius will inform the Court if, in fact, Luna does make such payment when due.

counterclaims Luna may have under the Co-Location Agreement.

14. Finally, Mawson's complaint that Celsius wants the arbitration to be a "one-way street" is both inaccurate and ignores the role of the Arbitrator. The Arbitrator <u>granted</u> the Celsius Rule 34 Request, because of the likelihood of success on the merits with respect to **both** the Note and Mawson's Guaranty, and the prospect that such an award would simplify the subsequent arbitration proceedings.[9] Applying that same Rule 34 standard, the arbitrator <u>denied</u> Luna's Rule 34 request on certain of its alleged counterclaims after due consideration — because those claims were unlikely to succeed on the merits and/or would not simplify the remaining proceedings.[10]

## **<u>RESERVATION OF RIGHTS</u>**

15. In light of prior proceedings in this involuntary case and the limited relief Celsius is seeking in the Lift Stay Motion, it is clear that Mawson's Objection is wasteful and has needlessly imposed costs on Celsius. Accordingly, Celsius reserves all of its rights, including without limitation, to pursue appropriate sanctions against Mawson in this Court and/or seek such costs as part of any subsequent award that might be entered by the Arbitrator.

WHEREFORE, Celsius respectfully requests entry of an order substantially in the form of Exhibit A attached to the Lift Stay Motion (i) lifting the automatic stay to permit Celsius to prosecute the Rule 34 Motion and, if successful, to confirm any partial final award in a court of competent jurisdiction, subject to the limitation that Celsius would not

---

[9] *See* AAA Commercial Rule 34, attached as <u>Exhibit E</u> to the First Wofford Declaration and Celsius Rule 34 Request, attached as <u>Exhibit A</u> to the Third Wofford Declaration.
[10] Copies of Luna's Rule 34 request, Celsius's response, and the Procedural Order Denying Luna Rule R-34 Application are attached as <u>Exhibit D</u> to the Third Wofford Declaration.

be authorized to undertake any Guaranty Award Enforcement Actions without a further order of the Court, which shall include any order dismissing the involuntary petition; and (ii) granting such other and further relief to Celsius as this Court deems just and proper.

Dated: February 21, 2025
       Wilmington, Delaware

**VENABLE LLP**

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)
1201 North Market Street,
Suite 1400
Wilmington, DE 19801
Tel: 302.298.3535
daobrien@venable.com

    and

Jeffrey S. Sabin (*pro hac vice*)
**VENABLE LLP**
151 West 42nd St.
New York, New York 10036
Tel: (212) 307-5500
jssabin@venable.com

    and

Andrew J. Currie (*pro hac vice*)
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 344-4000
ajcurrie@venable.com

    and

Stephen Moeller-Sally (*pro hac vice*)
**WHITE & CASE LLP**
75 State Street
Boston, MA 02109
Tel: (617) 979-9300
ssally@whitecase.com

    and

Keith H. Wofford (*pro hac vice*)
**WHITE & CASE LLP**
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4900
Miami, Florida 33131-2352
Tel: (305) 371-2700
kwofford@whitecase.com

*Counsel for Celsius Network Limited*