# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Mawson Infrastructure Group, Inc., | Case No. 24-12726 (MFW) |
| | Re: Dkt. Nos. 73, 79 |
| Alleged Debtor. | |

### REPLY TO MAWSON INFRASTRUCTURE GROUP, INC.'S OBJECTION TO THE MOTION OF CELSIUS NETWORK LIMITED FOR SANCTIONS AGAINST MAWSON INFRASTRUCTURE GROUP, INC. PURSUANT TO THE COURT'S INHERENT AUTHORITY AND 11 U.S.C. § 105(a)

Celsius Network Limited ("**Celsius**"), acting by and through the Blockchain Recovery Investment Consortium LLC, in its capacity as Complex Asset Recovery Manager and Litigation Administrator for Celsius Network LLC and its affiliated Post-Effective Date Debtors, hereby files this reply (the "**Reply**") to *Mawson Infrastructure Group, Inc.'s Objection to the Motion of Celsius Network Limited for Sanctions Against Mawson Infrastructure Group, Inc. Pursuant to the Court's Inherent Authority and 11 U.S.C. § 105(a)* (the "**Objection**"). In support of the Reply, Celsius respectfully states as follows:[1]

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of Celsius Network Limited for Sanctions Against Mawson Infrastructure Group, Inc. Pursuant to the Court's Inherent Authority and 11 U.S.C. § 105(a)* (the "**Motion**").

**PRELIMINARY STATEMENT**

1. Mawson's Objection is another attempt at misdirection and mischaracterization. Mawson fails to address or even acknowledge two clear legal and factual bases of Celsius's Motion. First, Mawson alone chose to impose unnecessary costs on Celsius when it attempted to exploit the automatic stay in this involuntary case – a stay that it opposes – to hinder and delay imminent and adverse rulings in an arbitration proceeding that it compelled. And second, this Court made specific findings that Mawson's reversal of positions was both judicially estopped and in bad faith. Mawson's attempts to extend and enforce the automatic stay were not a good faith effort to "maintain the status quo." Rather, these efforts were obvious delay tactics intended to forestall adverse rulings by the Arbitrator on Rule 34 Dispositive Motions on the Note and the Guaranty (the "**Rule 34 Motions**"). *See, e.g.,* TRO Hearing Transcript, 29:17-19. Mawson glosses over these improper motives and paints itself simply as an aggressive litigant that advanced a novel legal theory, but found itself on the losing end of a couple of motions.

2. Mawson further alleges that its opposition to the Lift Stay Motion was a plain vanilla attempt to vindicate the protections of the automatic stay for involuntary debtors, but it was not. The purpose of the automatic stay in an involuntary case is to protect creditors by preventing the dismemberment or dissipation of the debtor's estate (which purpose was not threatened by continuation of the arbitration against either Luna or Mawson). *See, e.g., In re E.D. Wilkins Grain Co.*, 235 B.R. 647, 650 (Bankr. E.D. Cal. 1999). Celsius did not seek permission to exercise remedies against Mawson's assets, and the Court had already held that any delay in the Arbitration was prejudicial to Celsius.

Thus, Mawson's opposition can only be explained by a desire to prejudice Celsius through further delay and expense.

3. Mawson warns that granting the Motion could undermine the automatic stay in involuntary cases and chill effective advocacy. But Celsius's pursuit of sanctions is not based on any purported policy argument about the application of the automatic stay. Rather, it is based on Mawson's demonstrated conduct in this case and in other related proceedings. This Court's accurate conclusions about Mawson's continuing gymnastics show that the legal standard set forth for imposition of sanctions has been met — and thus Mawson should bear the attendant costs, not Celsius. Under these circumstances, sanctions are appropriate, and Celsius respectfully requests the Court to grant the Motion.

## REPLY

**A.     Mawson's Attempts to Exploit the Automatic Stay to Thwart the Rule 34 Motions Were in Bad Faith and Merit the Imposition of Sanctions.**

4. The legal and factual basis for sanctions in this instance is clear. The Court has the inherent power to impose sanctions for bad faith conduct. *See*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). This Court found that Mawson's efforts to stop the arbitration through the TRO Motion were in bad faith. The same conclusion is supported by Mawson's conduct in respect of the Lift Stay Motion. The declarations submitted in connection with the TRO Motion, the Lift Stay Motion and the instant Motion provide an ample factual basis for the Court to assess sanctions under its inherent authority. Alternatively, that same factual record also supports the Court's exercise of its discretion to assess sanctions under section 105(a) of the Bankruptcy Code.

5. In this Court's bench ruling on the TRO Motion, it held that Mawson's "efforts, at this point, to stop [the] arbitration are really in bad faith." TRO Hearing Transcript, 29:15-17. Mawson's improper motives were obvious: "It's just to delay the possibility of losing the Rule 34 motion that is pending before the arbitrator." TRO Hearing Transcript, 29:17-19.

6. Mawson waited until January 17, 2025 – the Friday before the Martin Luther King, Jr. holiday weekend, and more than six weeks after the commencement of this involuntary case – to file the Adversary Proceeding and the TRO Motion seeking an extension of the automatic stay to halt the Arbitration proceedings against Mawson's non-debtor subsidiaries, Luna and Cosmos. The Arbitrator had set a briefing schedule for the Rule 34 Motions on November 23, 2024, a full two months before the hearing on the TRO Motion. The Arbitrator briefly suspended the original schedule upon the filing of the involuntary petition on December 4, 2024 (which filing preceded the deadline for Celsius's opening brief on the Rule 34 Motions by mere hours). After a status conference with the Arbitrator held on December 17, 2024 at which all parties were represented (but which Mawson's bankruptcy counsel declined to attend, notwithstanding an express invitation from Celsius), the Arbitrator transmitted a revised schedule to all parties that same day. Accordingly, Celsius filed its Rule 34 Dispositive Motion on the Note on December 20, 2024. Mawson was required to file its opposition on January 16, 2025 with Celsius's reply due by January 24, 2025.

7. Knowing the difficulty of extending the automatic stay to its non-debtor subsidiaries, on January 10, 2025, Mawson tried instead to persuade the Arbitrator to stay the Arbitration against Luna and Cosmos by, among other things, advancing the patently

4

false legal argument that the automatic stay in Mawson's involuntary case precluded the advancement of Celsius's claims against Mawson's non-debtor subsidiaries.[2] Celsius explained that Mawson's request was both substantively and procedurally improper,[3] which led the Arbitrator to his January 13, 2025 ruling that any stay of the Rule 34 Dispositive Motion on the Note would require an order of this Court. Simultaneously, the Arbitrator extended the opposition deadline for the Rule 34 Dispositive Motion on the Note to January 20, 2025 and the reply deadline to January 25, 2025. Thus, after failing before the Arbitrator, the filing of the Adversary Proceeding and the TRO Motion was a last-ditch attempt by Mawson to evade a ruling by the Arbitrator on the merits – without regard to Mawson's prior legal positions or the costs to be imposed on Celsius. Celsius incurred $190,891.17 in legal fees to address the TRO Motion.

8. Mawson's opposition to the Lift Stay Motion was similarly in bad faith. The relief Celsius requested was narrowly tailored to allow the Rule 34 Dispositive Motion on Mawson's Guaranty to go forward in the Arbitration and to confirm any award in a court of competent jurisdiction. Celsius did not seek the right to exercise remedies against Mawson's assets. Notwithstanding the Court's finding only weeks before that Mawson's efforts to stop the Arbitration were in bad faith, and despite the lack of objection from any petitioning creditors, Mawson refused to consent to, and actually objected to, the relief requested in the Lift Stay Motion — causing a waste of judicial resources and imposing unnecessary costs on Celsius. Contrary to Mawson's arguments, Celsius neither took the

---

[2] "Regardless, the case law demonstrates that claims like those Claimants seek to advance in this Matter against Mawson's subsidiaries fall under the types of claims that must be stayed." *See, Declaration of Keith H. Wofford in Support of Opposition of Celsius Network LTD. and Celsius Mining LLC to the Alleged Debtor's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Extending the Automatic Stay Pursuant to 11 U.S.C. 105*, Ex. G at 2, Adv. Pro. 25-50008 [Docket No. 16].
[3] *Id.*, Ex. H.

position that the automatic stay does not apply in involuntary cases, nor argued that an alleged debtor is empowered to stipulate to relief from stay while an involuntary case is pending. Had Mawson consented to stay relief, as twice requested by Celsius, significant expenses would have been eliminated and (given the consent of the petitioning creditors, which Mawson had been told of), a contested hearing on the Lift Stay Motion would have been avoided. Celsius incurred $74,053.85 in legal fees to prepare the Lift Stay Motion and $87,490.00 in legal fees to address Mawson's objection.

9. Mawson's opposition to the Lift Stay Motion was calculated to avert another adverse ruling in the Arbitration. The Arbitrator had already determined months earlier that Celsius was likely to succeed on the merits of its Rule 34 Dispositive Motion on the Guaranty, when he approved Celsius's request to file that motion.[4] Based on prior experience, Mawson knew that briefing and a ruling would likely occur in a matter of weeks. In other words, if Celsius were granted relief from stay, there was likely to be an adverse ruling on Mawson's liability under the Guaranty *before* the trial on the petition in this involuntary case, where the failure of Mawson to pay its debts is directly at issue. As expected, on April 14, 2025, the Arbitrator rendered a partial final award on the Guaranty in favor of Celsius.

---

[4] *See* AAA Commercial Rule 34, *Declaration of Keith H. Wofford in Support of Opposition of Celsius Network LTD. and Celsius Mining LLC to the Alleged Debtor's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Extending the Automatic Stay Pursuant to 11 U.S.C. 105*, Ex. E, Adv. Pro. 25-50008 [Docket No. 16].

**B.     Celsius Is Entitled to Compensation for the Legal Fees It Incurred Due to Mawson's Bad Faith Conduct, and the Amounts Celsius Seeks Are Reasonable.**

10.     Mawson misrepresents Celsius's request for sanctions as a "second bite at the apple" intended to make up for the fact that the Arbitrator declined in his partial final award for costs of collection for the Note (the "**Fee Award**") to award Celsius any fees and expenses it incurred outside of the Arbitration.  The insinuation that the Motion is a collateral attack on the Fee Award is disingenuous, and another product of Mawson's use of selective and misleading disclosure to this Court.  As Mawson knows, the Arbitrator flatly preserved Celsius's right to seek recovery of fees and expenses for services rendered outside the Arbitration:  "For the avoidance of doubt, this Tribunal makes no determination and implies nothing with respect to whether (a) the charges of K&E, Venable or Willkie submitted in support of this Fee Award Application, or (b) charges of White & Case for services that the Tribunal has determined to be not sufficiently related to enforcement of the Note, are charges that may be recoverable in the Bankruptcy Court or in any other forum for services that are not primarily related to the enforcement in arbitration of Celsius Network's rights under the Note."  Fee Award, p. 4.[5]  Mawson's Objection also ignores that Celsius expressly reserved its right to recover costs in the settled order denying the TRO Motion, which was entered before Celsius had even made an application to the Arbitrator for the Fee Award.  Celsius made the very same reservation in the settled order

---

[5]     A copy of the Fee Award is attached as Exhibit E to the *Declaration of Isaac Hoenig in Support of Mawson Infrastructure Group Inc.'s Objection to the Motion of Celsius Network Limited for Sanctions Against Mawson Infrastructure Group, Inc. Pursuant to the Court's Inherent Authority and 11 U.S.C. § 105(a)*. [Docket No. 79-6].

granting the Lift Stay Motion, which was entered before the Arbitrator had rendered the Fee Award. In other words, Celsius's Motion is by no means an afterthought.

11. The assessment of legal fees as a sanction under the Court's inherent authority is compensatory, not punitive. *Goodyear*, 581 U.S. at 108. In other words, in exercising its inherent authority, the Court should calibrate the fee award so "it covers the legal bills that the litigation abuse occasioned." *Id.* This compensatory principle does not contemplate a challenge to the hourly rates or staffing decisions by attorneys for the innocent party. Nor should it, since the purpose of the sanction is to "redress the wronged party 'for losses sustained.'" *Id.* (citation omitted). The offending party's view of what is or is not reasonable should have no bearing, because none of the losses would have been incurred, but for the offending party's misconduct.

12. Even so, the amounts Celsius has requested as sanctions are reasonable. The hours spent by White & Case and Venable on the TRO Motion and Lift Stay Motion were justified under the circumstances. Mawson filed the TRO Motion on an emergency basis, which required a reply within four days – most of which was during the Martin Luther King, Jr. holiday weekend. In addition to a 20-page opposition and oral argument, the time spent in this phase included preparing a declaration with no fewer than 11 exhibits. Further, given Mawson's refusal to consent to the relief requested in the Lift Stay Motion despite this Court's prior ruling and lack of creditor opposition, Celsius was required to spend substantial extra time preparing its motion in anticipation of a contested hearing, including preparing a supporting declaration. That contested hearing on the Lift Stay Motion did arise and further required the preparation of a reply and an additional declaration, along with oral argument.

13. Further, the hourly rates charged by White & Case and Venable are reasonable. They are consistent with the standard rates charged for services in the bankruptcy community by lawyers of comparable skill, experience and reputation and are consistent with standard rates approved by bankruptcy courts in this district. The staffing decisions by White & Case and Venable are also reasonable. Both firms relied on attorneys with prior knowledge of the Arbitration and the long and grueling history of disputes between Celsius and Mawson. Reliance on more senior attorneys was appropriate in response to the emergency presented by the TRO Motion and was further justified to the extent, as Mawson claims, the TRO Motion was advancing novel legal theories. It bears repeating that this "emergency" was of Mawson's own making, since it waited more than six weeks after the petition date to seek relief from this Court. It was also reasonable for White & Case and Venable to rely on the same team of attorneys for the Lift Stay Motion, given their prior experience with the TRO Motion.

14. The assessment of legal fees as a sanction under section 105(a) is discretionary and does not require a finding of bad faith. *NNN 400 Capital*, 2019 WL 5073844 at \*2. Unlike under Rule 11, sanctions under section 105(a) are not limited to amounts necessary to deter misconduct but may also be compensatory. *See, In re Antonelli*, No. 11-20255 (JHW), 2012 WL 280722, at \*15 (Bankr. D. N.J. Jan. 30, 2012). The *NNN 400 Capitol* court truncated the holding of *In re Antonelli*, when it concluded that the "main purpose of sanctions under Rule 9011 and section 105, including fee-shifting sanctions, is to deter conduct that amounts to abuse of the bankruptcy process, not to compensate opposing parties." 2019 WL 5073844 at \*4. The *Antonelli* court, in fact, observed that

section 105 "allows a court to impose civil sanctions *which are compensatory or* designed to coerce compliance." 2012 WL 280722 at *15 (emphasis added).

15. Applying the compensatory principle under section 105(a) produces the same result as the assessment of attorneys' fees under the Court's inherent authority. Compensatory damages are also a necessary deterrent for Mawson's misconduct. The record is clear that Mawson's strategy has been to repeatedly delay anticipated adverse Arbitration decisions against it and its non-debtor subsidiaries. This has caused Celsius to run up hundreds of thousands of dollars in legal fees, while at the same time Mawson has refused to abide by the rulings of its chosen tribunal. Failure to award compensatory damages would simply incentivize Mawson to continue to impose costs on Celsius through more procedural gamesmanship.

**CONCLUSION**

16. Celsius respectfully requests the Court to overrule Mawson's Objection and enter an order granting the Motion substantially in the form of Exhibit A to Celsius's Motion (i) assessing monetary sanctions against Mawson in the amount of $352,435.02; and (ii) granting such other and further relief to Celsius as this Court deems just and proper.

[*remainder of page left blank intentionally*]

Dated: May 6, 2025
       Wilmington, Delaware

       **VENABLE LLP**

       <u>/s/ Daniel A. O'Brien</u>
Daniel A. O'Brien (No. 4897)
1201 North Market St., Suite 1400
Wilmington, DE 19801
Tel: 302.298.3535
daobrien@venable.com

    and

Jeffrey S. Sabin (*pro hac vice*)
**VENABLE LLP**
151 West 42nd St.
New York, New York 10036
Tel: (212) 307-5500
jssabin@venable.com

    and

Andrew J. Currie (*pro hac vice*)
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 344-4000
ajcurrie@venable.com

    and

Stephen Moeller-Sally (*pro hac vice*)
**WHITE & CASE LLP**
75 State Street
Boston, MA 02109
Tel: (617) 979-9300
ssally@whitecase.com

    and

Keith H. Wofford (*pro hac vice*)
**WHITE & CASE LLP**
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4900
Miami, Florida 33131-2352
Tel: (305) 371-2700
kwofford@whitecase.com

*Counsel for Celsius Network Limited*
