**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Mawson Infrastructure Group, Inc. (n/k/a Big Digital Energy, Inc. | ) | Case No. 24-12726 (MFW) |
| Alleged Debtor. | ) | |
| Mawson Infrastructure Group, Inc. | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 25-52482 (MFW) |
| W Capital Advisors PTY Ltd. et al., | ) | **Rel. Docs. 5, 19, 20, 21, 22, 30, 42, 43, 116, 117, 119, 120, 127** |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the Court is the Motion of Defendants Andrew Martin and David Marshall ("Martin and Marshall") to Dismiss the Complaint filed by Mawson Infrastructure Group, Inc. (the "Plaintiff"). For the reasons stated below, the Court will deny the Motion.

## I. FACTUAL BACKGROUND[1]

On December 4, 2024 (the "Petition Date"), W Capital Advisors Pty Ltd ("W Capital"), Marshall Investments GCP Pty Ltd. (f/k/a Marshall Investments MIG Pty Ltd) ("Marshall Investments"), and Rayra Pty Ltd ("Rayra") filed an involuntary

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Instead, the facts recited are those averred in the Complaint and the Answer, to the extent they are undisputed.

petition under chapter 11 of the Bankruptcy Code against the Plaintiff (the "Involuntary Petition").[2]

The Involuntary Petition was contested by the Plaintiff and limited discovery was conducted. On August 25, 2025, Marshall Investments filed a motion asking the Court to dismiss the Involuntary Petition, which was supported by all of the Petitioning Creditors.[3] After considering the motion and position of the Plaintiff, the Court entered an order dismissing the Involuntary Petition on November 4, 2025, with certain conditions, including preserving the Plaintiff's right to file an adversary complaint seeking attorneys' fees, costs, and damages pursuant to section 303(i) of the Bankruptcy Code.[4]

On December 29, 2025, the Plaintiff filed a complaint against the Petitioning Creditors and others.[5] In the Complaint, the Plaintiff seeks the following relief: costs and attorneys' fees under section 303(i)(1) incurred by Plaintiff in contesting the Involuntary Petition (Count I), actual and punitive damages under section 303(i)(2) caused by the Petitioning Creditors' bad faith in filing the Involuntary Petition (Count II), actual

---

[2] D.I. 1. References to the docket in the main case are to "D.I. #." References to the docket in this adversary proceeding are to "Adv. D.I. #."

[3] D.I. 163, 172, 175, 187.

[4] D.I. 265.

[5] Adv. D.I. 1, 2, 5.

damages for violation of the automatic stay (Count III), and preliminary and permanent injunctions enjoining the Defendants from any acts to collect, assess, or recover pre-petition claims or to commence or continue actions in violation of section 362(a) and directing the unwinding of any such actions taken (Count IV).[6]

On April 15, 2026, Martin and Marshall filed a Motion to Dismiss the Complaint. The Plaintiff opposed the Motion. After briefing was complete, the Court held oral argument on the Motion to Dismiss on August 20, 2026.

Martin and Marshall argued that the Court did not have personal jurisdiction over them because neither is located in the United States and neither had sufficient contacts with the United States with respect to the matters addressed in the Complaint. They contend that under Delaware's fiduciary shield law they cannot be held individually liable for actions taken on behalf of Marshall Investments.

Mawson argued that the Court does have personal jurisdiction over Martin and Marshall because Martin had signed the Involuntary Petition on behalf of Marshall Investments and both Martin and Marshall had actively participated in the bankruptcy case by, inter alia, signing answers to interrogatories and being deposed. At the conclusion of the August 20 hearing, the Court

---

[6] Id.

continued the hearing and allowed the Plaintiff to file an Amended Complaint with sufficient allegations to support its argument that Martin and Marshall have subjected themselves to the jurisdiction of this Court.

On September 11, 2026, Mawson filed an Amended Complaint[7] and a Supplemental Opposition to the Motion to Dismiss.[8] Martin and Marshall filed a Supplemental Reply on September 18, 2026.[9] The Court heard further oral argument at the hearing held on September 30, 2026, at which time the Court orally denied the Motion to Dismiss. This Memorandum Opinion sets forth the reasons for that ruling.

## II. JURISDICTION

The Bankruptcy Court has subject matter jurisdiction over all "proceedings arising under title 11 or arising in or related to a case under title 11."[10] The claims asserted in the adversary proceeding filed by the Plaintiff are core matters because they arise under section 303 and 362 of the Bankruptcy Code.[11]

---

[7] Adv. D.I. 115, 116.

[8] Adv. D.I. 120.

[9] Adv. D.I. 127.

[10] 28 U.S.C. §§ 157(a), 157(b)(1), 1334(b).

[11] Id.

Even if the parties have not all consented to the Court entering a final order in this adversary proceeding,[12] the Court does have the authority to enter orders on preliminary matters that do not constitute a final adjudication, such as the instant Motion to Dismiss.[13]

## III. DISCUSSION

Martin and Marshall base their Motion to Dismiss on their contention that the Court lacks personal jurisdiction over them and that it fails to state a claim against them.

### A. Standard of Review

#### 1. Personal Jurisdiction

Rule 12(b)(6) provides for dismissal of a complaint for

[12] The Plaintiff has consented to the entry of a final order on its Complaint. Adv. D.I. 5 ¶ 25. Martin and Marshall did not state in their Motion to Dismiss whether they consented to entry of a final order or not. Adv. D.I. 19, 20. Thus, they are deemed to have consented to the entry of a final order on their Motion to Dismiss. See Fed. R. Bankr. Pro. 7008 (requiring pleadings to state whether the pleader consents to the entry of final orders or judgments); Del. Bankr. L.R. 7008-1 ("If no such statement is included, unless otherwise ordered by the Court, the pleader will have waived the right to contest the authority of the Court to enter final orders or judgments.").

[13] See, e.g., O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before and after Stern v. Marshall, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint.") (citations omitted).

"lack of personal jurisdiction."[14] The Court's exercise of personal jurisdiction must satisfy Due Process under the Fifth Amendment.[15] To meet that standard, a plaintiff has the burden to demonstrate that the defendant has "minimum contacts" with the forum sufficient to subject it to the Court's jurisdiction.[16] In the bankruptcy context, the plaintiff need show only that the defendant has minimum contacts with the United States as a whole, rather than with any particular state.[17]

---

[14] Fed. R. Civ. P. 12(b)(2). The applicable Federal Rules of Civil Procedure are incorporated into the Federal Rules of Bankruptcy Procedure. See Fed. R. Bankr. P. 7012.

[15] See Dunn v. Barney (In re GCX Ltd.), Adv. Proc. No. 21-50264 (TMH), 2024 WL 667366, at *6 (Bankr. D. Del. Feb. 16, 2024) ("[T]he Court determines the limits of its jurisdiction under the Fifth Amendment of the United States Constitution."). See also Fed. R. Bankr. P. 7004(f) (stating that "[i]f exercising jurisdiction is consistent with the United States Constitution and laws, serving a summons or filing a waiver of service under this Rule 7004 or the applicable provisions of Fed. R. Civ. P. 4 establishes personal jurisdiction over a defendant" in a bankruptcy case or adversary proceeding).

[16] Dunn, 2024 WL 667366, at *6 ("Due process requires that the defendant establish certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (internal quotations omitted); Finova Cap. Corp. v. Cote (In re Finova Cap. Corp.), 358 B.R. 113, 119-20 (Bankr. D. Del. 2006) ("In order to comply with the constitutional requirements of due process, the defendant must have had at least minimum contacts within the forum.").

[17] Bickerton v. Bozel S.A. (In re Bozel S.A.), 434 B.R. 86, 97 (Bankr. D. Del. 2010) (holding that in a bankruptcy case personal jurisdiction requires minimum contacts with the United States, not the forum state; AstroPower Liquidating Trust v. Xantrex (In re AstroPower Liquidating Trust), 335 B.R. 309, 317 (Bankr. D. Del. 2005) (holding that "in bankruptcy cases 'the forum' is the United States in general, not the particular forum state. . . . Accordingly, the Court will apply a 'national contacts' standard, and not merely a 'Delaware contacts' standard, in determining whether the Court's exercise of in personam jurisdiction over [the defendants] is proper."); Finova Cap.,

To satisfy the minimum contacts standard, the plaintiff bears the burden of establishing either general or specific jurisdiction over the defendant.[18] General jurisdiction over an individual defendant exists when the person is "at home" in the United States.[19] Specific jurisdiction "arises when the particular cause of action arose from the defendant's activities within the forum."[20]

The standard to be applied in considering a motion to dismiss for lack of jurisdiction is the same as that applied when considering a motion to dismiss for failure to state a claim. "It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed

358 B.R. at 119–20 ("[A] showing of minimum contacts within the United States is necessary.") (internal citations omitted).

[18] Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ("When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper."); Reach & Assocs., P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003) ("Although a plaintiff is entitled to have all reasonable inferences drawn in its favor, it bears the burden of alleging facts sufficient to make a prima facie showing that personal jurisdiction exists over the Defendants.").

[19] Koch v. Pechota, 744 F. App'x 105, 110 (3d Cir. 2018) ("The Supreme Court has identified two types of personal jurisdiction: specific and general. . . . a court has general jurisdiction, even if the underlying controversy did not take place in the forum state, when a defendant's 'affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'") (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)).

[20] Reach & Assocs., 269 F. Supp. 2d at 502.

facts in favor of the plaintiff."[21]

2. Failure to State a Claim

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."[22] Under Rule 12(b)(6), a complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23] The plaintiff must state enough facts for the Court to determine that "a claim for relief is plausible on its face."[24] The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[25] A claim is plausible when the court can "draw a reasonable inference that the defendant is liable for the misconduct alleged."[26] The

---

[21] Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) (citation omitted). Cf. Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (holding that in considering a motion to dismiss for failure to state a claim, the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.").

[22] Fed. R. Civ. P. 12(b)(6).

[23] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[24] Id. at 570.

[25] See, e.g., Alpizar-Fallas, 908 F.3d at 914.

[26] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (describing applicable pleading standards).

moving party "bears the burden to show that the plaintiff's claims are not plausible."[27]

B. Arguments

1. Personal Jurisdiction

a. Fiduciary shield

Martin and Marshall contend that the "fiduciary shield" doctrine provides that contacts with a forum by corporate representatives acting in their capacities as corporate officers and fiduciaries are legally insufficient, without more, to give rise to personal jurisdiction.[28] The Plaintiff responds that the fiduciary shield doctrine is applicable only to due process concerns under the Fourteenth Amendment and is not applicable to Fifth Amendment Due Process which forms the basis for personal jurisdiction under the Bankruptcy Code.[29]

---

[27] UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC), 610 B.R. 779, 783 (Bankr. D. Del. 2020). See also In re Intel Corp. Microprocessor Antitrust Litig., 496 F. Supp. 2d 404, 408 (D. Del. 2007) ("The burden of demonstrating that dismissal is appropriate rests on the movant.").

[28] See, e.g., Reach & Assocs., 269 F. Supp. 2d at 503 ("The purpose of the fiduciary shield doctrine is to prohibit acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual."); Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 433–34 (D. Del. 1999) ("The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual.").

[29] Bozel S.A., 434 B.R. at 99 (holding that the fiduciary shield doctrine has not been recognized in New York and "is not relevant to the constitutional due process analysis and relates only to the reach of state long-arm statutes."); Levey v. Hamilton (In re Teknek, LLC),

The Court agrees with the Plaintiff that the fiduciary shield doctrine is not applicable. Mere corporate employment or actions purportedly taken only in their capacity as representatives of Marshall Investments does not insulate Martin and Marshall from the jurisdiction of this Court.[30] Rather, their actions must be examined to determine if they are sufficient to warrant the exercise of this Court's jurisdiction over them individually.

b. General Jurisdiction

Martin and Marshall argue that it is undisputed that their respective domiciles are Australia, not the United States.[31] They, therefore, contend that this Court lacks general jurisdiction over them. This is not disputed by the Plaintiff and, therefore, does not afford a basis for personal jurisdiction over Martin and Marshall.

---

354 B.R. 181, 195 (Bankr. N.D. Ill. 2006) (holding that the fiduciary shield doctrine is "not a limitation imposed by federal constitutional law").

[30] Calder v. Jones, 465 U.S. 783, 790 (1984) (holding that the defendants' "status as employees does not somehow insulate them from [personal] jurisdiction. Each defendant's contacts with the forum State must be assessed individually."). See also, AstroPower, 335 B.R. at 320 (Bankr. D. Del. 2005) (holding that "the fiduciary shield doctrine is a judicial gloss upon the Delaware long-arm statute, which is irrelevant here. There appears to be no federal constitutional counterpart to this doctrine.") (citations omitted).

[31] See Adv. D.I. 21 ¶ 3 (Marshall Decl.); Adv. D.I. 22 ¶ 3 (Martin Decl.).

c. Specific Jurisdiction

Martin and Marshall contend, however, that specific jurisdiction is not applicable because the sole basis alleged for Plaintiff's claims against them is that they are non-executive directors of Marshall Investments and that Martin signed the Involuntary Petition as a representative of Marshall Investments, a Petitioning Creditor.[32] They argue that those are insufficient contacts with the forum to create specific jurisdiction.

The Plaintiff responds that the Court has specific personal jurisdiction over Martin and Marshall as a result of the numerous actions that they took to avail themselves of the jurisdiction of this Court to further their plot to destroy Mawson. It alleges that Martin and Marshall had numerous contacts with the United States including Marshall Investments' loan to a NASDAQ-listed U.S. corporation and its affirmative actions against that company in this Court.[33] It asserts that Martin and Marshall used Marshall Investments as their alter ego in perpetrating the bad faith filing of the Involuntary Petition.[34] The Plaintiff cites

---

[32] Adv. D.I. 115, 116 ¶¶ 10-13, 191-99.

[33] See, e.g., Adv. D.I. 115, 116 ¶¶ 34-36 (describing the adverse effects on Mawson and its stock from the filing of the Involuntary Petition), 93 (Martin prepared an email to others detailing "Mawson next steps" and a planned allocation of any recoveries from Mawson among the Petitioning Creditors).

[34] Id. ¶ 111 ("Marshall referenced himself individually as being owed money from Mawson"), ¶ 114 ("Marshall and Martin together negotiated the alleged loan to Mawson with Manning, managed the alleged default, developed the Common Interest Agreement with W

allegations in the Amended Complaint supporting this contention, including that Marshall conspired with James Manning over many months to plan the Involuntary Petition filing, recruited additional Petitioning Creditors, arranged for the assignment of $50,000 of Marshall Investment's debt to Rayra to qualify it as a Petitioning Creditor, and gave directions to counsel to file the Involuntary Petition.[35] The Complaint alleges that Martin participated in the efforts to shut down the Plaintiff's business, signed the Involuntary Petition as Executive Director of Marshall Investments, and participated in the involuntary bankruptcy case extensively, including in discovery and mediation efforts.[36]

The Court concludes that the allegations in the Amended Complaint, if proven, are sufficient to establish that the Court has specific jurisdiction over Martin and Marshall. Courts have found specific jurisdiction over individuals who have simply executed and filed bankruptcy petitions on behalf of corporate debtors.[37] In addition to Martin's execution of the Involuntary Petition, however, the Amended Complaint alleges that Martin and

---

Capital and Manning, and worked with Manning and Wolter for more than six months prior to the Petition Date to plan and orchestrate the Involuntary Case.").

[35] Id. ¶¶ 93, 111-14, 118, 124-30.

[36] Id. ¶¶ 112-14, 118-21, 124-28, 131-33.

[37] See, e.g., In re Cambridge Analytica LLC, 596 B.R. 1, 5 (Bankr. S.D.N.Y. 2019); Bozel S.A., 434 B.R. at 100.

Marshall took extensive action directed at this forum, including participating extensively in the planning and implementation of the strategy to force the Plaintiff into bankruptcy, in the conduct of (and opposition to) discovery in the bankruptcy case, and in participation in the judicial mediation conducted by Judge Clarkson.[38] These specific intentional acts of deliberately commencing an action in this forum against the Plaintiff, a Delaware corporation, and continuing to prosecute it until it failed to suit their interests provides sufficient contacts with the United States for this Court to exercise specific jurisdiction over Martin and Marshall. Both could have anticipated that the filing would harm the Plaintiff; in fact the Amended Complaint alleges that that was the intent of Martin and Marshall.[39] Therefore, the Court concludes that the Plaintiff has adequately alleged that the Court has personal jurisdiction over Martin and Marshall in accordance with the Fifth Amendment's Due Process requirement that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."[40]

---

[38] Id. ¶¶ 93, 111-14, 118-21, 124-33.

[39] See, e.g., id. ¶ 121 ("The real reason that the collateral [which Mawson invited Marshall Investments to collect and liquidate to satisfy its debt] was never collected was that Marshall and Martin colluded with Manning to utilize the Involuntary Case as a means to further their plan to destroy Mawson. Those discussions manifested into a plan to place Mawson into involuntary bankruptcy.").

[40] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

d. Jurisdictional Discovery

Martin and Marshall contend nonetheless that discovery must be conducted to determine whether the Court has personal jurisdiction over them. The Court rejects that argument. If the Plaintiff has stated sufficient facts supportive of personal jurisdiction, which the Court must accept as true,[41] then discovery is not warranted. The cases cited by Martin and Marshall involved instances where the plaintiff had not stated sufficient facts to establish jurisdiction.[42] In those circumstances, the Third Circuit has ruled that the "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"[43] Because the Court concludes that the Plaintiff has alleged sufficient facts to establish jurisdiction over Martin and Marshall, jurisdictional discovery is not warranted. Of course, the Court

---

41 Toys "R" Us, 318 F.3d at 457.

42 See, e.g., Toys "R" Us, 318 F.3d at 454 ("Based on the facts established in this case thus far, Toys has failed to satisfy the purposeful availment requirement [for personal jurisdiction]."); Robert Bosch LLC v. Alberee Prods., Inc., 70 F. Supp. 3d 665, 681 (D. Del. 2014) ("Examining the limited evidence presented, . . . . the Court cannot at this time find the Delaware long-arm statute is satisfied with respect to API.").

43 Toys "R" Us, 318 F.3d at 455-58 (finding that the district court erred in refusing to allow the plaintiff to conduct jurisdictional discovery); Bosch LLC, 70 F. Supp. 3d at 681 (allowing the plaintiff to conduct discovery because its jurisdictional contentions were not frivolous). But see Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) (affirming district court's denial of additional jurisdictional discovery because the plaintiff's claims against certain individual defendants were clearly frivolous).

is not making any final decision on this but is only addressing the motion to dismiss. Full discovery may, of course, reveal that the Court has no personal jurisdiction over Martin and Marshall just as it may reveal that the Plaintiff's claims, though sufficient to withstand a motion to dismiss, are not sufficient to warrant judgment in the Plaintiff's favor.

2. Failure to State a Claim

Martin and Marshall also contend that the Complaint contains insufficient allegations of actions by them to state a claim under section 303(i). They contend that that section permits an action only against a petitioning creditor, which neither of them were.[44] They assert that if Congress intended to make others liable (including officers and directors of a petitioning creditor) it would have said so, like it did in other statutes.[45]

The Plaintiff argues that courts have held that individuals who are "de facto petitioners" as a result of the substantial assistance they provide to another in filing an involuntary petition can be held liable for damages under section 303(i).[46]

---

[44] See, e.g., Visium Tech., Inc. v. Tarpon Bay Partners, LLC. (In re Visium Tech., Inc.), 635 B.R. 428, 432 (Bankr. S.D. Fla. 2022) (concluding that "[t]he text of the Bankruptcy Code is clear that the term 'petitioners' includes only the 'entities' that signed the petition, and not their principals, agents, or owners.").

[45] Cf. 12 U.S.C. § 503; 15 U.S.C. § 78t; 18 U.S.C. § 152.

[46] See, e.g., In re Rosenberg, 779 F.3d 1254, 1268 (11th Cir. 2015) (holding that entity that exercised control over petitioning creditors could be held liable as "de facto petitioner" under § 303(i)); In re S. California Sunbelt Dev., Inc., 608 F.3d 456, 460, 466–67 (9th Cir.

In the Amended Complaint, they contend that Martin and Marshall did not simply assist Marshall Investments in its filing but actually orchestrated, directed, and controlled the filing and prosecution of the Involuntary Petition.[47]

Although there is conflicting case law on this point, the Court finds more persuasive the analysis of the courts which conclude that one who substantially assists a Petitioning Creditor can be held liable under section 303(i) for damages caused by that filing.[48] Therefore, the Court finds that the Complaint states a claim against Martin and Marshall under section 303(i) for their actions in allegedly orchestrating and directing Marshall Investments to file the Involuntary Petition against the Plaintiff.

Martin and Marshall further contend that the Amended Complaint does not have sufficient factual allegations supporting a claim that Martin and Marshall were de facto Petitioning Creditors. They assert that the Amended Complaint ignores the fact that the Plaintiff is actually seeking to pierce the

---

2010) (holding individuals who controlled the petitioning creditors liable under 303(i)); Nat'l Med. Imaging, LLC v. U.S. Bank, N.A. (In re Nat'l Med. Imaging, LLC), 570 B.R. 147, 158-59 (Bankr. E.D. Pa. 2017) (finding that plaintiff stated claim against defendants who were not petitioning creditors under agency or de facto petitioner theories where they exercised exclusive control over the petitioning creditors and signed the involuntary petition on their behalf).

[47] Adv. D.I. 115, 116 ¶¶ 93, 111-14, 118-21, 124-33.

[48] See supra note 46.

corporate veils of two entities, Marshall Investments (the Petitioning Creditor) and the trust for whom Marshall Investments was acting (Marshall Investments MIG Trust). They contend that, as Australian entities, its law applies, and the Plaintiff asserts nothing about what that law provides. Even if Third Circuit law applies, Martin and Marshall contend that it is a stringent standard that the Plaintiff has not met in its Amended Complaint.[49]

The Court rejects this argument. There are numerous allegations that Martin and Marshall used the Petitioning Creditor, Marshall Investments, for their own purpose, namely to put Mawson out of business, inter alia, by filing the Involuntary Petition. The Court must accept those allegations as true, not the counter-allegations of Martin and Marshall which permeate their Motion to Dismiss.

---

[49] See, e.g., Trinity Indus., Inc. v. Greenlease Holding Co., 903 F.3d 333, 365 (3d Cir. 2018) (the test includes "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [subsidiary] corporation, siphoning of funds from the [subsidiary] corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.") (quoting Pearson v. Component Tech. Corp., 247 F.3d 471, 484–85 (3d Cir. 2001)); Voxtur Analytics Corp. v. Haldane, No. 25-742-GBF-SRF, 2026 WL 392641, at *9 (D. Del. Feb. 5, 2026) (finding that plaintiffs had not shown a basis for personal jurisdiction based on an alter ego theory because they had not stated facts supporting any of the factors, nor had they stated fraud or inequity in the misuse of the corporate form.); CNH Am. LLC v. Kinzenbaw, No. C.A. 08-945 (GMS), 2009 WL 3737653, at *1 (D. Del. Nov. 9, 2009) ("It is well established, however, that mere ownership or direction of a corporate entity, without more, is not sufficient to establish that the corporate form should be disregarded.").

Further, the Plaintiff contends other bases for its claims against Martin and Marshall. The Plaintiff argues that the allegations of the Amended Complaint support a finding that Martin and Marshall are liable as agents of Marshall Investments in filing the Involuntary Petition.[50] In addition, it argues that under Delaware law, corporate officers are personally liable for their own tortious conduct, even when that conduct is undertaken in a corporate capacity.[51] Finally, it argues that the Court has the inherent power to sanction those who abuse the bankruptcy process.[52]

---

[50] See In re Oakley Custom Homes, Inc., 168 B.R. 232, 235, 243–44 (Bankr. D. Colo. 1994) (holding that an agent and attorney who directed a principal to commit or participate in a wrongful act was personally liable for the resulting harm); Nat'l Med. Imaging, 570 B.R. at 158–59 (finding that plaintiff stated claim against defendants who were not petitioning creditors under agency or de facto petitioner theories where they exercised exclusive control over the petitioning creditors and signed the involuntary petition on their behalf). See generally RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006) (an agent is subject to liability for conduct that is tortious regardless of whether the agent acts on behalf of a principal).

[51] Yavar Rzayev, LLC v. Roffman, C.A. No. S14L-12-035 MJB, 2015 WL 5167930, at *6 (Del. Super. Ct. Aug. 31, 2015) ("[W]hen a corporate officer directly participates in the tortious conduct, personal liability may be imposed, even when the officer is acting on behalf of the corporation."); Prairie Capital III, L.P. v. Double E Holding Corp., 132 A.3d 35, 62 (Del. Ch. 2015) ("A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud.") (citations omitted).

[52] S. Ca. Sunbelt Devs., 608 F.3d at 466–67. See also In re Linton, 631 B.R. 882, 898 (B.A.P. 9th Cir. 2021), aff'd, No. 21-60053, 2022 WL 17077498 (9th Cir. Nov. 18, 2022) ("Regardless of whether the court has discretion to join non-petitioners directly as defendants in a § 303(i) action, non-petitioners can be exposed to the equivalent of § 303(i) awards by way of inherent power theories.").

Martin and Marshall respond that these new theories of liability should not be considered by the Court.

The Court disagrees. To the extent these legal theories are supported by the factual allegations of the Amended Complaint, they provide the basis for a claim. At the Motion to Dismiss stage, the Court will not foreclose such theories.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Dismiss filed by Martin and Marshall.

The Court will issue an Order consistent with this Opinion.

Dated: October 5, 2026

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge